UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EDWARD J. REINHART,

                Plaintiff,

        -v-                              1:15-CV-1095

CITIMORTGAGE, INC., TOM P. ROSICKI,
DEBORAH M. GALLO, VIRGINIA
GRAPENSTER, LAURA STRAUSS,
ANTHONY P. LUCKIE, WILLIAM KNOX,
ROSICKI, ROSICKI & ASSOCIATES P.C.,
ASHLEY S. MILLER, AKERMAN LLP,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INC., and CYNTHIA ROSICKI,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

EDWARD J. REINHART
Plaintiff, Pro Se
698 County Route 353
Rensselaerville, NY 12147

AKERMAN LLP                          JORDAN M. SMITH, ESQ.
Attorneys for Defendants CitiMortgage,
   Inc., Mortgage Electronic Registration
   Systems, Inc., Akerman LLP, and
   Ashley S. Miller
666 Fifth Avenue, 20th Floor
New York, NY 10103

ROSICKI ROSICKI ASSOCIATES        LIJUE T. PHILIP, ESQ.
Attorneys for Cynthia Rosicki, Tom P.      ANDREW C. MORGANSTERN, ESQ.
   Rosicki, Deborah M. Gallo, Virginia
   Grapenster, William Knox, and Rosicki,
   Rosicki & Associates P.C.
51 East Bethpage Road
Plainview, NY 11803

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## **I. INTRODUCTION**

On September 10, 2015, plaintiff Edward Reinhart ("Reinhart" or "plaintiff"), proceeding pro se, filed this action asserting various "claim[s] of trespass" arising from the foreclosure and sale of his home. Plaintiff's action named defendants CitiMortgage, Inc. ("CMI") and Mortgage Electronic Registration Systems, Inc. ("MERS"), the two entities involved in his home mortgage loan, Akerman LLP ("Akerman") and Rosicki, Rosicki, & Associates P.C. ("Rosicki"), the two law firms that appeared on behalf of CMI in the foreclosure action, and seven of the individual attorneys employed by those firms.

Shortly thereafter, CMI, MERS, Akerman, Rosicki, and the individually named defendants (collectively "defendants") moved to dismiss the various claims pursuant to Federal Rule of Civil of Procedure ("Rule") 12(b)(1) based on a lack of subject matter jurisdiction; alternatively, defendants sought dismissal of plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) for failure to state any plausible claims upon which relief could be granted. Those motions were fully briefed.

Thereafter, Reinhart filed an amended complaint that, liberally construed, asserted claims pursuant to the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act ("TILA"), the Federal Debt Collection Practices ("FDCPA") Act, and the New York Uniform Commercial Code ("UCC"). This amended complaint alleged that defendants: (1) failed to respond to plaintiff's Qualified Written Request/Notice of Rescission as required by RESPA; (2) failed to rescind his mortgage note under TILA; (3) insufficiently

responded to a request for information under the FDCPA; (4) failed to respond to plaintiff's settlement offer under the UCC; and (5) failed to "validate the debt" by providing the original promissory note of the mortgage loan plaintiff borrowed from CMI under the UCC. Defendants' motions will be considered on the basis of the submissions and without oral argument.

## II. BACKGROUND

For reasons discussed in detail below, the following factual allegations are taken from Reinhart's amended complaint, or from documents integral to it, and will be assumed true for purposes of resolving defendants' motions to dismiss. See, e.g., Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 508 n. 2 (S.D.N.Y. 2010).

On December 13, 2006, Reinhart purchased a home located at 698 County Route 353 in Rensselaerville, New York (the "Property") by executing a $262,500 promissory note (the "Note") in favor of CMI. The value of the loan was secured by a mortgage against the Property that named MERS as mortgagee.[1]

On February 2, 2010, Reinhart defaulted on the Note. MERS assigned the mortgage back to CMI, who then commenced a foreclosure action in Supreme Court, Albany County, against the Property. That action was initially dismissed on July 20, 2012.

However, on May 7, 2014, Rosicki, later replaced by Akerman, successfully initiated another foreclosure action on behalf of CMI in the same jurisdiction. This time around, CMI obtained a summary judgment and an order of reference. Reinhart did not appeal this state

---

[1] MERS is "an electronic mortgage registration system and clearinghouse that tracks beneficial ownership interests in, and servicing rights to, mortgage loans." In re: Mortg. Elec. Registration Sys. (MERS) Litig., 659 F. Supp. 2d 1368, 1370 (U.S. Jud. Pan. Mult. Lit. 2009). The propriety of its use has generated considerable litigation. See, e.g., id.

court determination. Instead, plaintiff filed this federal court action.

## III. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." Saleh v. Holder, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing Makarova, 201 F.3d at 113). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." Id. (citations omitted).

### B. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where the plaintiff has failed to provide some basis for the allegations that support the elements of her claims. See Twombly, 550 U.S. at 570

(requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are deemed to be true, and all reasonable inferences must be drawn in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002).

These basic pleading requirements apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)) (internal quotation marks omitted).  In other words, "[w]here, as here, the complaint was filed pro se, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests."  Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (quoting Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, S.J.) (internal quotation marks and footnote omitted).  Even a pro se plaintiff must plead sufficient factual allegations suggesting an entitlement to relief.  See id.  Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678 (citations omitted).

## IV. **DISCUSSION**

As an initial matter, defendants have jointly filed a letter motion requesting that Reinhart's amended complaint be considered a "nullity" because he failed to file it inside the twenty-one day time period permitting unilateral amendment.  See FED. R. CIV. P. 15(a).

Generally speaking, "[w]here a plaintiff seeks to amend his complaint while a motion

to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." Hamzik v. Office for People with Developmental Disabilities, 859 F. Supp. 2d 265, 273-74 (N.D.N.Y. 2012) (quoting Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

As defendants argue, it seems clear from the face of Reinhart's originally filed complaint in this action that subject matter jurisdiction over his claims would be lacking. This is so because plaintiff's original complaint, which appears to have only raised state law claims as opposed to any claims under federal law, failed to establish that "diversity jurisdiction" should apply.[2] See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States.").

Importantly, this latter requirement requires "complete diversity"; that is, "each plaintiff's citizenship must be different from the citizenship of each defendant." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004) (Cardamone, J.).

The problem for Reinhart is that his original complaint seems to run afoul of both of § 1332's requirements. According to plaintiff's complaint, the value of the controversy "exceeds" only "20 dollars." More problematically, a number of the named defendants appear to be domiciled in New York, making them non-diverse for purposes of § 1332. See, e.g., Philip Decl., ECF No. 9-1, ¶ 2. Of course, defendants rightly seized on these

---

[2] Specifically, Reinhart's original complaint states that "[r]espondents jointly or severally do trespass on property by moving a false claim in name of non-principal by denial of due process, use of forged instruments to defraud by false claims and breach of fiduciary duty." Even liberally construed, these appear to be state common law claims.

deficiencies in their respective motions to dismiss.

Reinhart, perhaps recognizing the jurisdictional flaws in his original complaint, submitted an amended complaint after briefing was completed on defendants' now-pending motions. But while defendants seek to have plaintiff's amendment declared a "nullity," pressing this argument ignores controlling Second Circuit precedent and the historical solicitude afforded to pro se litigants.

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (citation and internal quotation marks omitted).

Therefore, in the interest of judicial economy, and out of solicitude to Reinhart, the amended complaint will be considered the operative pleading for purposes of analyzing whether he has stated any plausible claims for relief. Straker v. Metro. Transit Auth., 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) (noting "the Court may *sua sponte* grant leave to amend").

### A. RESPA

Reinhart alleges he sent a "qualified written request" to CMI on July 24, 2011 "demanding validation of the debt alleged at issue in the instant case." Am. Compl. at 5. According to plaintiff, this document "gave notice of suspected violations of [RESPA]" and identified ten charges plaintiff sought to dispute. Id. Plaintiff alleges CMI never responded to this letter and is therefore liable for damages pursuant to § 2605(e). See id.

Section 2605 permits a borrower to submit to a "qualified written request," also known as a QWR, to a loan servicer requesting "information related to servicing" of the loan. Gorbaty v. Wells Fargo Bank, N.A., 2014 WL 4742509, at *4 (E.D.N.Y. Sept. 23, 2014)

(quoting 12 U.S.C. § 2605(e)(1)(A)).

A QWR is defined by this statute as "written correspondence" that: (1) "includes, or otherwise enables a servicer to identify, the name and account of the borrower"; and (2) "includes a statement of the reasons for belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

Importantly, a plaintiff seeking to press a § 2605 claim must sufficiently allege one of two types of available damages: (1) "'actual damages to the borrower as a result of the failure' to respond to the QWR or otherwise comply with § 2605; or (2) statutory damages, not to exceed $1,000, 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605." Gorbaty, 2014 WL 4742509 at *5 (quoting 12 U.S.C. § 2605(f)).

"In order to recover *actual* damages, a plaintiff must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605—i.e., the timing and form of [defendants'] responses to Plaintiff's QWR[ ]." Gorbaty, 2014 WL 4742509 at *5.

"Simply saying that, for example, the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused, is not enough to survive a motion to dismiss." Bonadio v. PHH Mortg. Corp., 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) (citation and internal quotation marks omitted).

Alternatively, "[i]n order to obtain *statutory* damages, a plaintiff must establish a 'pattern or practice of noncompliance with the requirements' of § 2605." Gorbaty, 2014 WL 4742509, at *8 (quoting 12 U.S.C. § 2605(f)).

In this case, Reinhart alleges that CMI failed to respond to a single QWR request he

- 8 -

sent on July 24, 2011, which enumerated eighteen "apparent" RESPA violations related to his loan. But even liberally construed, these allegations are insufficient to give rise to a plausible claim for statutory damages, since courts have held that the requisite "pattern or practice" is only established where a plaintiff alleges that the challenged actions amounted to the defendant's "standard or routine way of operating." McLean v. GMAC Mortg. Corp., 585 F. Supp. 2d 1360, 1365 (S.D. Fla. 2009); see also Gorbaty, 2014 WL 4742509, at *8 (rejecting plaintiff's attempt to separate alleged § 2605 violations into "their constituent parts"); Lal v. Am. Home Serv., Inc., 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (suggesting this type of claim requires allegations related to "other customers who also did not receive QWR responses" from the defendant). Accordingly, plaintiff has failed to plead a plausible claim for statutory damages.

Any claim of actual damages fare no better. "[S]imply having to file suit [does not] suffice as a harm warranting actual damages. If such were the case, every RESPA suit would inherently have a claim for damages built in." Lal, 680 F. Supp. 2d at 1223. Importantly for our purposes, "[c]ourts routinely interpret section 2605 as requiring a QWR to relate to the servicing of a loan, rather than the creation or modification of a loan." Gates v. Wachovia Mortg., FSB, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010).

As relevant here, a careful review of Reinhart's amended complaint describes a QWR that seeks information related to the origination of his loan, *not* the servicing of it. For example, plaintiff notes that his QWR stated "the contractual agreement entered into between debtor and lender was entered into under false pretenses and with a lack of full disclosure on the part of lender" and goes on to enumerate eighteen alleged failures of this full disclosure requirement. Am. Compl. at 5. Plaintiff also states that he "challenges the

entire amount of the debt from the beginning." Id.

Further, although plaintiff does indicate that, according to his calculations, the total amount he "would be defrauded" is $197,433.59 and the amount the "lender intended to defraud" him is $453,079.13, nothing connects either of those two numbers to any actual damages plaintiff has suffered.

Therefore, even assuming CMI completely failed to respond to a QWR sent by Reinhart, a non-response to the sort of request plaintiff identifies in his amended complaint would fall outside § 2605's ambit. See, e.g., Bray v. Bank of Am., 2011 WL 30307, at *12 (D.N.D. Jan.5, 2011) (dismissing RESPA claim when "[t]he ongoing communications sent to the Defendants challenge the validity of the loan and accuse the Defendants of various statutory violations"); Williams v. Wells Fargo Bank N.A., Inc., 2010 WL 1463521, at *3–4 (N.D. Cal. Apr. 13, 2010) (dismissing § 2605 claim where QWR "requested [documents] relate[d] to the original loan transaction"); MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885, 901 (N.D.Ill. 2000) (dismissing RESPA claim where QWR "sought information about the validity of the loan and mortgage documents" rather than information about the continuing servicing fo his loan). Accordingly, plaintiff has failed to state a viable RESPA claim.

### B. TILA

Reinhart also alleges CMI failed properly respond to his Notice of Rescission. See Am. Compl. at 10. According to plaintiff, defendants were statutorily obligated to "set[ ] in motion a series of automatic steps to unwind the transaction." Id. at 16.

"TILA's declared purpose is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . .'" Poulin v. Balise Auto Sales, Inc., 647 F.3d 36,

39 (2d Cir. 2011) (quoting 15 U.S.C. § 1601(a)). "Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) (citations omitted).

Like RESPA, TILA provides for "statutory and actual damages traceable to a lender's failure to make the requisite disclosures." Beach, 523 U.S. at 412. Importantly, however, TILA also grants "borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so.'" Jesinoski v. Countrywide Home Loans, Inc., 135 S. Ct. 790, 792 (2015) (quoting § 1635(a)).

"But this conditional right to rescind does not last forever. Even if a lender *never* makes the required disclosures, the 'right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first." Jesinoski, 135 S. Ct. at 792 (quoting § 1635(f)).

"This three-year period is a statute of repose, rather than a statute of limitations, meaning that the right is extinguished after the three-year period passes and is not subject to equitable tolling." Jacques v. Chase Bank USA, N.A., 2016 WL 423770, at *9 (D. Del. Feb. 3, 2016) (citing Beach, 523 U.S. at 419).

Here, even assuming Reinhart's July 24, 2011 letter to CMI sufficed as notice of his desire to rescind, plaintiff's ability to exercise that right ended in December 2009, since he obtained the loan on December 13, 2006. See ECF No. 1-3 at 81-102. Accordingly, plaintiff's TILA claim for rescission must fail.

### C. **FDCPA**

Reinhart also attempts to plead a claim under the FDCPA, which "prohibits deceptive and misleading practices by 'debt collectors.'" Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 159 (E.D.N.Y. 2007) (quoting 15 U.S.C. § 1692e).

Section 1692g, the provision identified by Reinhart in his amended complaint, "requires a debt collector to provide debtors with written notice of their validation rights." Sarno v. Midland Credit Mgmt., Inc., 435 F. App'x 44, 45 (2d Cir. 2011) (summary order).

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Importantly, however, an entity attempting to collect its own debt "is not a proper defendant under the FDCPA." Somin, 494 F. Supp. 2d at 160.

Here, Reinhart alleges he disputed the debt with CMI, who was attempting to collect the debt allegedly owed directly to it. Because CMI was attempting to collect a debt on its own behalf, not on behalf of another entity, it cannot be considered a "debt collector" within the meaning of the FDCPA. Accordingly, plaintiff's FDCPA claim must be dismissed. Fournier v. Bank of Am. Corp., 2014 WL 421295 at *6 (N.D.N.Y. Feb. 4, 2014) (McAvoy, S.J.) (dismissing plaintiff's FDCPA claim against mortgagee because "it is clear from the mortgage that [the bank] is the original lender"); Somin, 494 F. Supp. 2d at 160 (dismissing plaintiff's FDCPA claim against bank attempting to collect its own debt).

D. **State Law Claims**

Reinhart's amended complaint focuses on establishing violations of federal law pursuant to RESPA, TILA, and the FDCPA. However, plaintiff also attempts to bring claims pursuant to New York's UCC, Am. Compl. at 14, and his earlier complaint attempted to plead a number of state common law claims. Because plaintiff has failed to plead a plausible claim under any of the federal statutes he has identified, the exercise of supplemental jurisdiction over any state law claims expressed or implied in plaintiff's filing will be declined. See 28 U.S.C. § 1367(c). Accordingly, plaintiff will be free to pursue remedies for those alleged wrongs in the state courts.

V. **CONCLUSION**

Reinhart's original complaint fails to establish the "complete diversity" or minimum dollar amount required by § 1332. And plaintiff's amended complaint, which identifies a number of federal statutes, fails to state any plausible claims upon which relief can be granted.

Therefore, it is

ORDERED that

1. Defendants' motions to dismiss are GRANTED;

2. Plaintiff's original and amended complaints are DISMISSED; and

3. Plaintiff's state law claims are DISMISSED without prejudice.

The Clerk of the Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 30, 2016
      Utica, New York.

United States District Judge